■ PIXEL INTERNATIONAL NETWORK, INC., Respondent, v STATE OF NEW YORK, Appellant, et al., Defendants. (And Another Related Action.) [699 NYS2d 800] —Crew III, J. Appeals (1) from an order of the Supreme Court (Teresi, J.), entered July 29, 1997 in Albany County, which, *inter alia*, denied the State's motion for summary judgment, and (2) from an order of said court, entered July 8, 1998 in Albany County, which, *inter alia*, granted plaintiff's motion for a declaratory judgment.

In August 1990, plaintiff and the Division of the State Fair, Department of Agriculture and Markets (hereinafter the Department) entered into an agreement, pursuant to the terms of which plaintiff was to install and operate an electronic message center marquee and up to six illuminated billboards on the grounds of the State Fair, located in the Town of Geddes, Onondaga County (*see*, 228 AD2d 899, 900). This agreement was approved by the Attorney General and the Comptroller (*see*, *id.*).

Thereafter, in September 1991, plaintiff sought and received approval from the Department to assign its right to construct and operate the six billboards to defendant Vancom Enterprises, Inc. Plaintiff and Vancom memorialized this assignment in two agreements, dated September 15, 1991 and May 14, 1992, respectively, neither of which were approved by the Attorney General or the Comptroller. During this same time period, plaintiff and the Department also agreed to certain clarifications of their prior agreement. Specifically, plaintiff and the Department agreed that the marquee would be replaced by an "Electronic Media Communication Center" (hereinafter EMCC), which plaintiff would own for a 10-year period and would then either sell to the Department for its fair market value or remove from the premises. This agreement, as set forth in a letter dated May 4, 1992, also was not approved by either the Attorney General or the Comptroller. Additionally, in June 1992, plaintiff entered into a joint venture agreement with defendant McGinn, Smith Capital Holdings Corporation (hereinafter MSCH), wherein MSCH agreed to provide funding for the construction and installation of the EMCC in

exchange for a share of the profits from the EMCC and the Vancom contract (*see, id.*).

Although plaintiff thereafter moved forward with the project, it ceased operating the EMCC in December 1992 due to problems that developed in the interim. As a result, MSCH informed plaintiff in January 1993 that it was in violation of the joint venture agreement. Following plaintiff's refusal to resume operation of the EMCC, the Department terminated its agreement with plaintiff in May 1993, at which time the Department also informed plaintiff that it had no legal basis to maintain the six remaining billboards on the premises (*see, id.*).

Plaintiff thereafter commenced an action against defendants seeking declaratory relief as to, *inter alia*, the ownership of the EMCC and the six billboards. Following joinder of issue, defendant State of New York moved for summary judgment, which motion was denied in June 1993. The State again moved for summary judgment in January 1994; Supreme Court (Spain, J.) again denied the motion and, on appeal, we affirmed (228 AD2d 899, *supra*). The State's third motion for summary judgment was denied by Supreme Court (Teresi, J.) in July 1997, prompting the State to again appeal to this Court. We dismissed that appeal, finding that the entry of Supreme Court's July 8, 1998 order confirming the Referee's report and granting plaintiff a declaratory judgment terminated the State's right to appeal from the intermediate order denying its motion for summary judgment (255 AD2d 666). Despite such dismissal, the State again appeals the July 29, 1997 order denying its motion for summary judgment, as well as Supreme Court's July 8, 1998 order confirming the Referee's report and granting plaintiff's motion for a declaratory judgment.

As a starting point, we once again dismiss the State's appeal from Supreme Court's July 29, 1997 order denying its motion for summary judgment. As we stated when this matter was last before us, "[t]he right to take a direct appeal from an intermediate order terminates with the entry of a final judgment in the action" (*id.*, at 666).

Turning to the State's appeal from Supreme Court's July 8, 1998 order granting plaintiff's motion for a declaratory judgment, the dispute between the parties distills to the applicability of State Finance Law § 112, which the State pleaded as an affirmative defense. State Finance Law § 112 provides, in relevant part, as follows.

"Before any contract made for or by any state agency, department, board, officer, commission, or institution, shall be exe-

cuted or become effective, whenever such contract exceeds [$10,000] in amount, it shall first be approved by the comptroller and filed in his or her office * * *

"A contract or other instrument wherein the state or any of its officers, agencies, boards or commissions agrees to give a consideration other than the payment of money, when the value or reasonably estimated value of such consideration exceeds [$10,000], shall not become a valid enforceable contract unless such contract or other instrument shall first be approved by the comptroller and filed in his [or her] office" (State Finance Law § 112 [2] [a]; [3]).

As noted previously, the May 4, 1992 modification agreement was not approved by the Comptroller.

In concluding that State Finance Law § 112 did not apply to the May 1992 modification agreement, the Referee based his decision, in part, upon the fact that the record was "devoid of any evidence of the value of the [EMCC], either at the time the modification dated May 4, 1992 was executed by the representative of the Fair, or as it presently exists". In other words, the Referee was of the view that the State had not demonstrated that it had either incurred a liability or given consideration in excess of the $10,000 threshold necessary to trigger the provisions of State Finance Law § 112. Based upon our review of the record, we agree.

Although the State argues, and correctly so, that there was testimony and documentary evidence as to the sum advanced to plaintiff by MSCH for the construction, financing, installation and operation of the EMCC, the costs incurred by plaintiff in this regard do not establish the fair market value of the EMCC at the time that ownership was transferred pursuant to the May 1992 modification agreement. Stated another way, simply reciting the construction costs and indebtedness incurred by plaintiff in connection with the EMCC does not establish that in transferring ownership of the structure itself, the State incurred a liability in excess of $10,000 or gave consideration in excess of that amount. Indeed, the record suggests that the real value of the EMCC stemmed from the advertising revenue that it could generate. In this regard, although the May 1992 modification agreement admittedly changed the manner in which the State's share of said revenues was to be calculated, the State does not argue and the record does not establish that the May 1992 agreement diminished the overall advertising revenue to be received by the State or, to the extent that such a diminution occurred, that it exceeded $10,000.

Under such circumstances, we agree with the Referee's finding, as confirmed by Supreme Court, that the State failed to show that State Finance Law § 112 governed the May 1992 modification agreement, pursuant to the terms of which plaintiff is the owner of the EMCC. Accordingly, the failure to obtain Comptroller approval of the May 1992 agreement did not render such agreement unenforceable. In light of this conclusion, we need not address the parties' remaining arguments regarding the applicability of State Finance Law § 112.

Mercure, J. P., Peters, Carpinello and Graffeo, JJ., concur. Ordered that the appeal from order entered July 29, 1997 is dismissed, without costs. Ordered that the appeal from order entered July 8, 1998 is affirmed, without costs.